# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CATHERINE DOBRANSKY,

        Plaintiff,

v.

ARROW ELECTRONICS, INC.,

        Defendant.

Case No.

Hon.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
Kara F. Krause (P85487)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
617 Detroit St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
Noah@hurwitzlaw.com
Grant@hurwitzlaw.com
Kara@hurwitzlaw.com

---

There is no other pending or resolved civil action arising out of this transaction or occurrence alleged in the Complaint.

## COMPLAINT AND JURY DEMAND

Plaintiff CATHERINE DOBRANSKY ("Plaintiff"), by and through her attorneys, HURWITZ LAW PLLC, states the following for her Complaint and Jury Demand against Defendant Arrow Electronics, Inc. (hereinafter, "Defendant"):

## INTRODUCTION

1.  There is no pandemic exception to the protections afforded by Title VII of the Civil Rights Act of 1964 ("Title VII") and the Elliott-Larsen Civil Rights Act ("ELCRA"). Defendant clearly did not understand this when it terminated Ms. Dobransky, a Quality Specialist who had served Defendant in exemplary fashion for nearly six years, in retaliation for requesting a religious accommodation to the COVID-19 vaccine. Plaintiff had been working remotely for two years and her position did not require her to travel or have face-to-face contact with anybody. Accordingly, she posed no health threat to any coworkers. However, instead of engaging with Plaintiff in the spirit of "bilateral cooperation," Defendant denied her religious accommodation request without any justification.

## PARTIES AND JURISDICTION

2.  Plaintiff is an individual residing in White Lake, Oakland County, in the State of Michigan.

3.  Defendant Arrow Electronics, Inc. is a for-profit company headquartered in Arapahoe County, Colorado.

4.  This Court has original diversity jurisdiction pursuant to 28 U.S.C. § 1332 because Defendant is now, and at all times mentioned was, a corporation duly organized and existing under the laws of Colorado and Plaintiff is now, and at all times mentioned was, a citizen and domiciled in the State of Michigan.

5. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(e), as it is the district where Plaintiff resides. 28 U.S.C. § 1391(e).

6. Plaintiff filed charges of religious and disability discrimination with the Equal Employment Opportunity Commission on March 22, 2022 and will amend her complaint to alleged federal discrimination claims once she receives a right to sue letter.

## FACTUAL ALLEGATIONS

**Plaintiff's Employment and Religious Accommodation Requests**

7. Plaintiff was hired as a Quality Specialist on September 6, 2016.

8. Defendant announced a policy requiring all employees to be fully vaccinated for COVID-19 or to submit accommodation requests on November 10, 2021.

9. Defendant's policy applied to Plaintiff, even though she had been working remotely for two years and her position did not require her to travel or have face-to-face contact with anybody.

10. Plaintiff submitted her religious accommodation requests detailing her sincerely held *bona fide* religious beliefs precluding vaccination on November 15, 2021—just five days after the policy was announced.

11. In her religious accommodation request, Plaintiff wrote, in pertinent part:

3

> I was born and raised with Catholic beliefs and ceremonies (Baptism, 1st Communion, Confirmation, Married in Church) and have raised our sons the same way. I believe the spirit of God (1 Corithians 3:16) resides in me (mind, heart, soul) and I am aware the "Covid-19 vaccination" process uses aborted fetal cell lines which my religious beliefs and moral compass do not condone. My body is God's temple and I will honor Him by not accepting this experimental injection. I choose my faith in God and His plans for me rather than subjecting his temple/my body to the known/unknown risks (which no organization seems to be accepting any liability for) associated with the "vaccine and boosters" Arrow is enforcing in order to maintain employment.

12. Defendant requested that Plaintiff provide additional information within three days.

13. Defendant asked the following questions:

   a. How does your belief that "my body is God's temple" apply to other aspects of your life?

   b. Do you regularly attend formal religious services related to your belief?

   c. Please identify all medication you are prohibited from taking due to your belief.

   d. Please identify all non-medical products you are prohibited from using due to your belief.

   e. Have you ever taken any vaccine? If so, when was the last time you had a vaccine?

4

    f.  Have you ever taken any prescription medications? If so, when?

    g.  Why did your belief allow you to take that prescription medication?

    h.  Have you requested a religious accommodation in the past? If so, please state when you made the request, the content of the request, and the result of the request.

    i.  Have you received medical treatment for a COVID-19 infection?

  14.  These questions were designed to elicit information that would form the basis of a denial, not to extract information.

  15.  Plaintiff supplied additional information on November 29, 2021, stating, in pertinent part:

> If I am willing to lose my job (although I don't want to) this should show my heartfelt belief that this is wrong and will hurt my body. The bible teaches you cannot serve God and money, so if you're mandating that I have to choose – I choose God (my body is God's temple) . . . If any prior medications taken had fetal cell lines, I wasn't aware of it; however, this time I am and cannot condone the deliberate killing of children… [A]attached is a letter from Father Tomy at Saint Mary Church in hopes my religious exemption will be granted . . . I feel termination under this mandate may not agree with standards of Equal Employment Opportunity Commission.

  16.  Plaintiff sought to make daily decisions, including those regarding vaccination and other medical decisions, through faith-based reasoning.

5

17.     Plaintiffs sincerely held religious beliefs precluded her from taking the COVID-19 vaccine.

18.     Potential accommodations that could have been offered includes mask wearing, social distancing, and daily and/or weekly testing.

19.     Consistent use of a face mask or respirator is associated with lower odds of infection. See Kristin L. Andrejko et al., *Effectiveness of Face Mask or Respirator Use in Indoor Public Settings*, CTRS. FOR DISEASE CONTROL AND PREVENTION (2022), available at https://www.cdc.gov/mmwr/volumes/71/wr/mm7106e1.htm.

20.     The sincerity of Plaintiff's religious beliefs is not open to question. *See Equal emp. Opportunity Comm'n v. Publix Super Markets, Inc.*, 471 F. Supp. 3d 684, 699 (M.D. Tenn. 2020); *citing United States v. Seeger*, 380 U.S. 163, 185 (1965) ("[T]he truth of a belief is not open to question).

21.     Title VII's definition of "religion" includes "all aspects of religious observance and practice, as well as belief."  42 U.S.C. § 2000e(j); *see also* 29 C.F.R. § 1605.1 ("In most cases whether or not a practice or belief is religious is not at issue… [R]eligious practices… include moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views.").

22. An individual's testimony about his or her belief "must be given great weight" and is enough to show she has a *bona fide* religious belief. *See e.g.*, *Seeger*, 380 U.S. at 184 (1965) (When dealing "with the beliefs of different individuals who will articulate them in a multitude of ways… the claim of the [party] that his [or her] belief is an essential part of a religious faith must be given great weight).

23. Moreover, "[a]s long as a party's beliefs are religiously asserted, it is not for the courts to challenge the truthfulness of such assertions simply because they developed 'from revelation, study, upbringing, gradual evolution, or some source that appears entirely incomprehensible." *E.E.O.C. v. Alliant Techsystems, Inc.*, No. CIV.A. 98-0084-R, 1998 WL 777015, at *6 (W.D. Va. Sept. 18, 1998) (*quoting Hobbie v. Unemployment Comm'n of Fla.*, 480 U.S. 136, 144 n. 9 (1987)).

24. There is no factual predicate in the record to suggest that Plaintiff lacked sincerity in her religious beliefs.

25. Defendant denied Plaintiff's accommodation request and retaliated against her for engaging in protected activity.

26. Defendant never provided an explanation why mask-wearing and other offered accommodations presented an undue hardship when the practice was deemed effective throughout the COVID-19 pandemic. See *McDaniel v. Essex Intern., Inc.*, 571 F.2d 338, 341 (6th Cir. 1978) ("The burden is on [the employer] to make an effort at accommodation and, if unsuccessful, to demonstrate that they were unable

to reasonably accommodate the plaintiff's religious beliefs without undue hardship.").

27. Plaintiff was not told (a) what about her religious accommodation requests posed an undue hardship; or (b) why she individually could not be accommodated.

28. Here, there was no offer of proof that mask-wearing would result in actual disruption of the work routine.

29. Defendant's refusal to deviate from a one-size-fits-all approach ignores the basic tenets of accommodation law.

30. The statutory framework for determining reasonable accommodation requires an interactive process and participation by both the employer and the employee. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986) (stating that, consistent with the goals expressed in the legislative history of the religious accommodation provision, "courts have noted that bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business").

31. "Once an employee makes [an accommodation] request, the employer is obligated by law to engage in an interactive process—a meaningful dialogue." *Equal Emp. Opportunity Comm'n v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621

(5th Cir. 2009). Defendant sabotaged the interactive process and evaded any sort of meaningful dialogue.

32. Defendant has no "satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962).

33. Plaintiff could have followed existing COVID-19 protocols at Defendant's facilities prior to the vaccine mandates.

34. Plaintiff could have tested for COVID-19 daily and/or weekly.

35. Plaintiff was denied any sort of interactive process or bilateral compromise.

36. Plaintiff was terminated effective January 7, 2022.

37. Plaintiff's religious conviction is highlighted by the fact she remained unvaccinated in the face of inevitable termination—losing her livelihood in the process.

**Defendant Violated EEOC Guidance**

38. On March 1, 2022, the EEOC expanded its guidance on religious exemption to employer vaccine mandates under Title VII of the Civil Rights Act of 1964 ("Guidance"). This Guidance describes in greater detail the framework under which the EEOC advises employers to resolve religious accommodation requests. *See* Guidance, *supra*.

9

39. The EEOC emphasizes that as a reasonable accommodation, an unvaccinated employee entering the workplace might wear a face mask, work at a social distance from coworkers or non-employees, work a modified shift, get periodic tests for COVID-19, be given the opportunity to telework, or finally, accept a reassignment. *Id*. at K.2.

40. The EEOC states that an employer cannot rely on speculative hardships when face with an employee's religious objection but, rather, should rely on objective information. *Id*. at L.3.

41. The EEOC states that, in many circumstances, it may be possible to accommodate those seeking reasonable accommodations for their religious beliefs, practices, or observances without imposing an undue hardship. *Id*. at K.12.

42. The EEOC instructs, "[i]f the employer denies the employee's proposed accommodation, the employer should explain to the employee why the preferred accommodation is not being granted." *Id*. at L.5.

43. "[T]he definition of religion is broad and protects, beliefs, practices, and observances with which the employer may be unfamiliar." *Id*. at K.12.

44. "The definition of 'religion' under Title VII protects both traditional and nontraditional religious beliefs, practices, or observances, including those that may be unfamiliar to employers." *Id*. at L.2.

10

45. "The employer should ordinarily assume that an employee's request for religious accommodation is based on sincerely held religious belief, practice, or observance." *Id*. at K.12.

46. "Employers should evaluate religious objections on an individual basis." *Id*. at L.2.

47. "An employer should thoroughly consider all possible reasonable accommodations." *Id*. at K.12.

48. In most circumstances, it is possible to accommodate religious beliefs "without imposing an undue hardship." *Id*. at L.3.

### Defendant Cannot Establish Undue Hardship

49. Pursuant to ELCRA, the prohibition against religious discrimination imposes an affirmative duty on employers to reasonably accommodate the religious observances and practices of its employees, unless the employer can demonstrate that such an accommodation would cause undue hardship to the conduct of its business. *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977).

50. "The obligation to provide religious accommodations absent undue hardship is a continuing obligation that allows for changing circumstances." Guidance at L.6.

51. Defendant bears the burden to show "that it is unable to reasonably accommodate the employee's religious beliefs without incurring undue hardship."

*McDaniel v. Essex Intern., Inc.*, 571 F.2d 338, 341 (6th Cir.1978); *see also Baz v. Walters*, 782 F.2d 701, 706 (7th Cir.1986); *Redmond v. GAF Corp.*, 574 F.2d 897, 901 (7th Cir.1978); *EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1512 (9th Cir.1989).

52. In the instant case, Defendant cannot show undue hardship—especially because Plaintiff had been working remotely for two years and her position did not require her to travel or have face-to-face contact with anybody.

53. An employer does not satisfy its burden "merely by showing that an accommodation would be bothersome to administer." *Draper v. United States Pipe & Foundry Co.*, 527 F.2d 515, 520 (6th Cir.1975).

54. "An employer cannot rely on speculative or hypothetical hardship when faced with an employee's religious objection but, rather, should rely on objective information." EEOC Guidance at L.3.

## COUNT I
### Violation of Elliott-Larsen Civil Rights Act ("ELCRA")
### Religious Discrimination—Failure to Accommodate

55. Plaintiff restates the foregoing paragraphs as set forth fully herein.

56. At all relevant times hereto, Plaintiff was an employee and Defendant was her employer for the purposes of ELCRA.

57. ELCRA makes it unlawful for an employer to fail or refuse to reasonably accommodate the religious beliefs and practices of an employee or prospective employee.

58. ELCRA prohibits an employer from discriminating against an employee because of religion.

59. After receiving an accommodation request, "the employer is obligated by law to engage in interactive process – a meaningful dialogue with the employee[.]" *Chevron Phillips Chem. Co.*, 570 F.3d at 621 (5th Cir. 2009).

60. The employer must act in "good faith," *Id.*, and the employee must "make a good faith attempt to satisfy his needs through means offered by the employer," *Brener v. Diagnostic Ctr. Hosp.*, 671 F.2d 141, 146 (5th Cir. 1982)

61. ELCRA makes it unlawful for an employer to retaliate against an employee who engaged in protected activity.

62. Plaintiff holds sincere *bona fide* religious beliefs that preclude her from receiving a COVID-19 vaccine.

63. Plaintiff informed Defendant of those beliefs and requested religious accommodation from the vaccine mandate.

64. Defendant refused to engage in a meaningful interactive process with Plaintiff regarding her religious accommodation request.

65. Under ELCRA, Plaintiff can establish a *prima facie* case of religious discrimination based on a failure to accommodate by showing: (1) she has a *bona fide* religious belief that conflicts with an employment requirement; (2) about which she informed the [Defendant]; and (3) she suffered an adverse employment action

13

for failing to comply with the conflicting employment requirement. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986).

66. Multiple accommodations could have been offered to Plaintiff. They include mask wearing and periodic testing for COVID-19—the very same accommodations being offered to virtually every public and private employee in the State of Michigan.

67. A "[r]easonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question." *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995).

68. Defendant would not suffer undue hardship by granting Plaintiff an accommodation.

69. The issue became moot when Defendant failed to engage each employee in "a meaningful dialogue" about the accommodation request and learn whether an acceptable accommodation would impose undue hardship. *Chevron Phillips Chem. Co.*, 570 F.3d at 621 (5th Cir. 2009).

70. Instead, Defendant announced a one-size-fits all approach to accommodation that deprived Plaintiff of the conversation necessary to discover what accommodations were possible. *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1285 (7th Cir. 1996) ("courts should look for signs of failure to

participate in good faith or failure by one of the parties to help the other party determine what specific accommodations are necessary" and "[a] party that fails to communicate... may also be acting in bad faith").

71. Irrespective of the interactive process, Defendant failed to provide Plaintiff with a reasonable accommodation for her religious beliefs.

72. Defendant thereby discriminated against Plaintiff because of her religious beliefs.

73. Defendant's failure to provide religious accommodations has harmed and will continue to harm Plaintiff.

74. As a direct and proximate result of Defendant's violation of ELCRA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

75. As a further direct and proximate result of Defendant's violation of ELCRA, Plaintiff has been denied employment and placed in financial distress and have suffered a loss of earnings and benefits, and a loss of and impairment of their earning capacity and ability to work and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

76. By failing to engage in the interactive process or offer any reasonable accommodation, Defendant's discriminatory actions were intentional and/or reckless and in violation of ELCRA.

## COUNT II
### Violation of Elliott-Larsen Civil Rights Act ("ELCRA")
### Religious Discrimination—Retaliation

77. Plaintiff restates the foregoing paragraphs as set forth fully herein.

78. At all relevant times hereto, Plaintiff was an employee and Defendant was her employer.

79. ELCRA prohibits an employer from discriminating against an employee because of religion. This "includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that [it] is unable to reasonably accommodate an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business."

80. Pursuant to ELCRA, it is unlawful for an employer: (1) to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's... religion; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individuals... religion[.]"

16

81. Defendant's mandatory vaccination policy evades any sort of bilateral cooperation or interactive process.

82. Simply by failing to engage with Plaintiff as to the possible reasonable accommodations, Defendant has violated the law.

83. Plaintiff engaged in protected activity when she requested religious accommodations from Defendant's vaccine mandate.

84. Defendant retaliated against Plaintiff by terminating her on January 7, 2022.

85. Plaintiff's religious beliefs and protected activity were the causes of Defendant's adverse employment action.

86. By retaliating against Plaintiff for engaging in protected activity, Defendant has violated ELCRA.

87. This violation has harmed and continues to harm Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter the following relief:

(A) Declare that Defendant has violated Title VII by failing to engage in the interactive process in response to requests for accommodation to its COVID-19 vaccine mandate;

(B)     Declare that Defendant has violated Title VII by discriminating against Plaintiff by failing to provide reasonable accommodations to its COVID-19 vaccine mandate;

(C)     Declare that Defendant has violated Title VII by retaliating against Plaintiff for engaging in protected activity;

(D)     Award Plaintiff damages, including back pay, reinstatement or front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages.

(E)     Award Plaintiff reasonable attorneys' fees and costs.

(F)     Grant any other relief that the Court deems just, proper, and equitable.

Respectfully submitted,<br>
HURWITZ LAW PLLC<br><br>
<u>/s/ <em>Noah S. Hurwitz</em></u><br>
Noah Hurwitz (P74063)<br>
<em>Attorneys for Plaintiff</em><br>
617 Detroit St., Ste. 125<br>
Ann Arbor, MI 48104<br>
(844) 487-9489<br>
Noah@hurwitzlaw.com

Dated: July 12, 2022

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CATHERINE DOBRANSKY,

    Plaintiff,

v.

ARROW ELECTRONICS, INC.,

    Defendant.

Case No.

Hon.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
Kara F. Krause (P85487)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
617 Detroit St. Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com
kara@hurwitzlaw.com

---

## DEMAND FOR TRIAL BY JURY

Plaintiff Catherine Dobransky, by and through her attorneys, Hurwitz Law PLLC, hereby demands a trial by jury in the above-captioned matter for all issues triable.

    Respectfully Submitted,
    HURWITZ LAW PLLC

    */s/ Noah S. Hurwitz*
    Noah S. Hurwitz (P74063)
    *Attorneys for Plaintiff*

617 Detroit St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
Noah@hurwitzlaw.com

Dated: July 12, 2022